AMERICAN MANGANESE STEEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8145. Promulgated July 14, 1927.

1. In taking inventory in 1919 petitioner determined that it had a surplus of merchandise, which, however, was in marketable condition, and thereupon it inaugurated a sales campaign to dispose of such surplus. A part of the surplus was sold in 1920, but it was found that there was no market for the greater part, which was then scrapped during the year. *Held,* petitioner is entitled to reduce its inventory for the year 1920 on account of the scrapped merchandise.

2. Overassessment, not arising from claim in abatement, determined by respondent for the year 1919. *Held*, the Board has no jurisdiction of the appeal for that year and motion to dismiss granted.

*G. A. Spencer, Esq.*, and *F. H. Bryan, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

This proceeding involves the determination by the Commissioner of an overassessment for the year 1919 in the amount of $23,947.92 and a deficiency for the year 1920 in the amount of $45,600. The question for determination is the year in which an inventory loss was sustained, the position of the petitioner being that the loss was sustained in the year 1920 and the position of the respondent being that the loss was sustained in the year 1919.

FINDINGS OF FACT.

The petitioner is a Maine corporation with its principal office in Chicago, Ill. During the taxable years in question it was engaged in the making of manganese steel castings to be used as integral parts in completed units manufactured by various other concerns and did not itself manufacture completed units. The products manufactured consisted of castings for rolling mills, manganese steel gears and pinions, castings for steam shovel builders, frogs, crossing inserts, switches, etc.

Between September and December, 1919, a physical inventory was taken which disclosed surplus castings on hand in the amount of 883,520 pounds. These castings represented an accumulation for the past three or four years and were castings made in excess of specific orders given to petitioner. During the World War petitioner had a very large labor turnover and due to laxity and inefficiency of employees many castings were overmade. All of these castings, however, were properly made and not defective. After the inventory had been taken the president of the company examined the castings, comprising the 883,520 pounds, and it was his opinion that the castings were marketable. At a meeting of the executive committee held in New York on December 8, 1919, the president of petitioner reported the facts and after discussion, instructions were given to him to make a further investigation in regard to such castings and to make such disposition of them as he and the vice president considered proper under the circumstances. Thereafter, and during the month of December, 1919, the president instructed the sales department to institute a sales campaign to sell such castings. Several hundred letters were written to the company's customers in regard to the sale of the castings. This sales campaign was carried on from the latter part of December, 1919,

to June or July, 1920. The replies to the letters were generally unfavorable, the amount realized from such sales in 1920 being only $5,411.46. The management thereupon determined that the proper course to pursue was to scrap these castings, which action was taken in the year 1920.

Petitioner valued the 883,520 pounds of castings in its closing inventory for 1919 and its opening inventory for 1920 at their cost of $134,716.03. The Commissioner valued such castings at $11,080.34 in the closing inventory for 1919 and the opening inventory for 1920, which represented the price at which a portion of the castings were sold in 1920, viz., $5,411.46, and the salvage value of the balance, or $5,668.88. The difference between the above amounts, viz., $134,-716.03 and $11,080.34, or $123,635.69, was allowed as an inventory loss by the Commissioner in 1919, whereas petitioner deducted the same amount in 1920.

### OPINION.

ARUNDELL: The Commissioner concedes that at the end of the year 1919 the taxpayer had on hand surplus castings amounting to 883,520 pounds and that these castings cost $134,716.03. It was contended by the Commissioner, however, that the surplus castings had only a scrap value at the end of the year 1919 and that this fact was known to petitioner. It was the practice of petitioner to overmake castings but these castings were never scrapped until an effort was first made to dispose of them and that practice was followed by it with reference to the surplus disclosed as a result of the inventory taken in the fall of 1919. It clearly appears from the evidence that the castings had been properly made and it was believed by the management of petitioner at the end of 1919 that at least a considerable portion of them might be disposed of as a result of a sales campaign. Under such circumstances we believe that petitioner was justified in leaving the castings in the inventory at their cost price until the result of the sales campaign could be determined. It was not until the following year of 1920 that it was definitely determined that there was no present market for most of these castings and during that year, and not before, the unsold castings were in fact scrapped. We are of the opinion that the inventory loss was properly taken in the year 1920.

At the trial of the case the Commissioner moved that the petition be dismissed in so far as it related to the year 1919, for the reason that no deficiency was found for that year, but an overassessment in the amount of $23,947.92, which overassessment was not the result of action on a claim for abatement or otherwise represented such a determination as would give the Board jurisdiction. The motion of

the Commissioner to dismiss the petition so far as the year 1919 is concerned is, therefore, granted. *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255; *Appeal of C. Willenborg & Co.*, 5 B. T. A. 788.

> *Judgment will be entered on 15 days' notice, under Rule 50.*